[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff wife has brought this action for dissolution of marriage against the defendant husband. The parties were married in Hungary on August 16, 1969. They have both resided in this state for more than one year preceding the bringing of this action.
There are two minor children of this marriage, Agnes born September 7, 1973, and Melissa born October 27, 1981. There are no other minor children of this marriage. The marriage has broken down irretrievably and there is no hope of reconciliation.
The parties have stipulated that they shall have joint custody of the children and that the plaintiff shall have physical custody of the children who will reside with her. They have stipulated that the defendant shall have reasonable rights of visitation.
The reason for the breakdown of the marriage according to the plaintiff and it appears to have been substantiated by the credible evidence is that the defendant has a drinking problem. He was hospitalized in 1987 for damage to his liver, but he asserts that he is not an alcoholic.
The plaintiff works as a head teller at People's Bank, a position to which she was promoted after having started as a teller in 1987. The defendant is a skilled carpenter who earned substantial sums of money, $80,000.00 or $90,000.00 net, in the `70's and still grossed in 1986 $108,372.00. However, in 1987 he only worked six months because of his hospitalization, and his gross earnings were reduced to $36,917.00 with a net of $7,352.00.
In that year, plaintiff, who had not been working CT Page 3699 since 1978, went back to work in order to pay outstanding bills and to meet their living expenses. She then started as a teller at People's Bank. She had worked previously from 1972 to 1978 during the time that defendant earnings were substantial. During that time, they also had their first child, Agnes, who is now 17 years old. All of the plaintiff's earnings during that period went into the household expenses along with those of her husband. She also managed her husband's business records and deposited whatever money he gave her from his earnings. The defendant's business was conducted from his house throughout all this period.
In addition to providing the major part of the money for the household expenses, the defendant also worked on the two houses which the parties bought. They bought one in Bridgeport in the Black Rock section in 1972 and sold that in 1978 at a profit. They then used the profit from that house to buy first a lot in Easton and then to build a house on that lot. The defendant did most of the work on the house and also may have exchanged his services with other tradesmen to do work which he could not do like plumbing and electricity. This is the house in which they presently live and which each party has valued at $300,000.00 to $360,000.00. There was no appraisal produced by either party. They do not even agree on the amount of the mortgage, one saying it's $83,000.00 and the other $86,000.00.
The plaintiff is claiming only $1.00 a year alimony and $125.00 per week per child for support. She is, however, requesting that she have exclusive possession of the house and that the defendant's interest in it be transferred to her in return for her paying him $40,000.00 or what she believes to be 20 per cent of the equity.
The defendant's claims are less clear amounting to a statement that 20 per cent would not be fair and suggesting as the support order $177.25 for both children per week.
The plaintiff has agreed to pay the loan to People's Bank, half of the loan due to Mr. Maklari and the balance due on the CBT Visa and CNB Mastercard. She would like her husband to pay Mr. Shemak and the other bills listed on his affidavit. She also wants the 1991 Oldsmobile which she is driving and the 1987 Mazda which was given to her daughter by the daughter's godfather but is registered in the plaintiff's name. She is willing to have the defendant keep the two cars he has, a 1982 pickup truck and a second car which is not listed. The plaintiff is willing to have the defendant keep his tools and all of the furniture in the basement where he is presently living. The plaintiff wishes the furniture in the rest of the house to be hers. CT Page 3700
The plaintiff will provide the medical and hospitalization for the children through her policy with People's. In addition, she will pay the premiums on the defendant's life insurance but wishes the policy turned over to her and she and the children made exclusive beneficiaries thereof. The policy is presently in the amount of $200,000.00, and the plaintiff wishes it to remain in that amount. All unreimbursed medical and hospital expenses for the children she wishes to be shared equally between the parties. While the defendant has already conveyed his interest in the house to her prior to the beginning of the divorce, he still has an equitable interest in it because it is part of the marital property, and she wishes his interest to be conveyed to her in return for her payment of the 20 per cent.
It is clear to the court that the two problems have contributed to the breakdown of the marriage, the defendant's drinking and the decline in his income. Since drinking to the extent that the defendant does indicates an alcoholic problem which is, in effect, an illness, fault cannot be in the court's opinion properly assessed against him. While he is at fault in not seeking treatment, the problem with alcoholism is that the alcoholic never seeks treatment until he has been hurt sufficiently by his alcoholism to want it or to think it is appropriate.
It is also apparent that the defendant, who is presently living in the basement of the house and who has had his business records maintained by his wife throughout the marriage of some 20 years, is going to be in a very isolated position once he moves out of the house and the divorce is granted. In addition, the services which his wife has been performing for him freely, in effect, must now be provided by somebody else at some expense so that his net income may be somewhat less than what he presently is earning or states that he is earning on his affidavit.
While the court has some question as to the accuracy of his figures, since there are no records presented to the court except the income tax returns with 1989 as the last year for the return, the court must rely principally on the affidavit which the defendant filed as of December, 1990. There was no serious attempt to question the accuracy of his figures, and in fact, he seems to have stated his weekly earnings at a higher rate than the plaintiff's counsel had assumed them to be on the basis of the 1990 income tax return for the year 1989.
Since the continuance of the support payments will depend on the ability of the defendant to work and that, in CT Page 3701 turn, may depend on his ability to make this enormous change in his living situation, the court would urge the defendant to seek an evaluation of his situation at Guenster House or some other appropriate alcoholic treatment center and follow their recommendations especially if they include residential treatment which could begin to provide him with a place to live until he has made some progress in reducing his drinking habits. His failure to do this could well be considered in any contempt citation for failure to keep up the support payments because of his inability to work through drinking.
While there was some problem with the defendant's threats to the plaintiff after the divorce was brought and her concern about the threats, in the court's opinion it was not those threats or any violence on his part which actually precipitated the bringing of the action. It was rather his drinking accompanied by the reduction in income.
The plaintiff is 40 years old and the defendant is 43 years old. The defendant is a high school graduate with a half year of college and the plaintiff is also a high school graduate with a year of accounting.
In determining the support order, counsel prepared their computations using the guidelines. However, the figures they used were slightly different, and the court used the figures on the financial affidavits of each and the computation with those figures is as follows:
The plaintiff's net income, without the deduction of the loan which is not an appropriate deduction, is $365.27, and the defendant's based on the $450.00 gross income with the taxes I deducted is $354.50. The combined net income, then, is $719.77 with the defendant's share amounting to 49 per cent thereof. On that net disposable income, the guidelines provide for two children, ages 16 and 17, the amount of $360.00. The defendant's share would be $176.40.
While the plaintiff has asked for more support than the guidelines provide, her own figures as represented suggested a figure different from the one the court has found to be appropriate; to wit, $183.23. as the defendant's share and $173.25 as the plaintiff's share. In making that computation, the plaintiff included an employee loan of $18.59 as deductible which the court did not. That makes the difference, I believe, in the computation.
Having considered all of the elements of 46b-81 and46b-82 of the General Statutes, the court makes the following findings and orders. CT Page 3702
1. The marriage has broken down irretrievably and is hereby dissolved.
2. All of the appropriate affidavits, financial, health and custody have been filed, and the parties have resided in this state more than a year before the onset of this action, and the court, therefore, has jurisdiction.
3. The stipulation with regard to the custody of the children is approved as in the best interests of the children, and the court, therefore, orders that the parties have joint custody of the children with reasonable rights of visitation in the defendant and with the plaintiff having physical custody of the children and their primary residence being with her. If the parties are unable to work out a reasonable visitation schedule with respect to the younger child, the matter should be referred to family relations and referred back to this court if no agreement is reached. With respect to the older child, visitation should be at her option in view of her age.
4. The defendant shall pay the plaintiff $1.00 a year alimony, and the plaintiff shall pay the defendant the same amount as alimony per year.
5. The defendant shall pay the sum of $177.00 per week for both children until each of them reaches the age of 18. When the oldest child reaches the age of 18, then the defendant shall pay the sum of $125.00 per week for the younger child until such time as she reaches the age of 18.
6. The plaintiff shall be entitled to exclusive possession of the marital home, and the defendant shall move out of that home forthwith, within thirty (30) days following the entry of this judgment. The defendant shall also quitclaim to the plaintiff whatever right, title or interest he may have in the home. In return therefore, the plaintiff shall execute a mortgage to the defendant in the amount of $90,000.00 payable as follows: within three months after the youngest child reaches the age of 18 or upon the sale of the house or upon the plaintiff's marriage or cohabitation within the meaning of the statutes, whichever first occurs.
7. The mortgage set forth in paragraph six, shall carry with it interest at the rate of of eight (8%) per cent per year payable as follows: for each month in which the defendant enters an alcoholic treatment program recognized as such by the Connecticut Commission on Alcoholism interest shall be paid. Interest shall continue to be paid for each month the CT Page 3703 defendant remains in an alcoholic treatment program unless he is discharged as requiring no further treatment. In that case interest shall continue to be paid until the mortgage is paid in full, provided, however, should the defendant resume his drinking habits and fail to enter a recognized treatment program, no interest shall be paid for the month after this has occurred and no interest shall be paid for any month in which he is not in a treatment program unless, again, he has been discharged and continues to remain sober.
 Any interest not paid because of the failure of the defendant to meet the conditions set forth in paragraph six shall be due and payable at the time the principal is paid
8. The plaintiff shall have sole ownership and possession of the 1991 Oldsmobile and the defendant shall have sole ownership and possession of the Chevrolet panel truck, and the parties shall execute whatever papers are necessary to effectuate this transfer. The plaintiff shall also have sole ownership and possession of the 1987 Mazda which is used by the parties' daughter, Melissa, and which was given to her by her godfather, and the defendant shall have exclusive possession and ownership of a second car which has not been identified except by reference to it by the plaintiff.
9. Each party shall be responsible for his or her own liabilities as set forth in the financial affidavits except for the loan from Steve Maklari which should be shared by both the plaintiff and the defendant equally an and the loan of $5,000.00 to Mr. Shemak which should be paid by the defendant husband.
10. The plaintiff has agreed to and is ordered to pay the Mastercard and Visa card accounts in CNB and CBT.
11. The defendant's life insurance policy shall be transferred to the plaintiff in the same amount in which it presently is; to wit, $200,000.00, and plaintiff shall pay the premium thereof.
12. The plaintiff shall be responsible for providing medical and hospital insurance for both children through her employment. Any unreimbursed medical and hospital bills shall be shared equally by the parties. If the plaintiff can obtain dental insurance as well through her employment, she shall be responsible for doing so. However, if no such insurance is available through her employment, then the expenses of dental care shall be shared equally by the parties. CT Page 3704
13. The furniture and furnishings of the upper floors of the 9 Bartling Drive residence shall be the sole personal property of the plaintiff as well as the lawn equipment. The defendant husband shall receive the tools and business equipment and personal belongings now in his possession and the furnishings located in the basement of the 9 Bartling Drive residence. Any records or other property of his used in his business wherever located in the house shall also be the defendant's.
14. A conditional wage execution order shall issue.
MARGARET C. DRISCOLL STATE TRIAL REFEREE